## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| ALPHA TOUCH GROUP LLC, | Case No. 2:25-cv- |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. |  |
| LENOVO GROUP LIMITED, et al, |  |
| Defendants. |  |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Touch Group LLC ("Alpha Touch" or "Plaintiff") for its Complaint for patent infringement against Defendants Lenovo Group Ltd., Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo Information Products (Shenzhen) Co. Ltd., LCFC (Hefei) Electronics Technology Co. Ltd. d/b/a LC Future Center and Lenovo Compal Future Center, Lenovo Centro Tecnológico S. de R.L. de C.V., Lenovo PC HK Ltd., Lenovo (Beijing) Limited, Lenovo (Thailand) Limited, Motorola Mobile Communication Technology Ltd. d/b/a Lenovo Mobile Communication Technology Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited (collectively "Lenovo " or "Defendants") alleges as follows:

## THE PARTIES

1.      Alpha Touch is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall, TX 75670.

2.      Defendant Lenovo Group Ltd. is a corporation organized and existing under the laws of China, with its principal place of business at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R., China. Lenovo Group Ltd. is a leading

manufacturer and seller of smartphones, tablets, and computers in the world and in the United States. Upon information and belief, Lenovo Group Ltd. does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

3.      Lenovo Group, Ltd., acting in concert with its subsidiaries and affiliates, manufactures and sells computers and handheld devices worldwide, including throughout the United States and within Texas. In 2019, Lenovo was the world's largest supplier of personal computers—accounting for nearly a quarter of global shipments of personal computers. The Lenovo group of companies—collectively known as "The Lenovo Group" or "Lenovo"—have a global reach and have a strong presence in the United States. Lenovo has approximately 72,000, employees worldwide[1], including thousands in the United States[2], with many people in the United States in management, design, engineering, marketing, and supply chain. Lenovo generates more than $69 billion of goods and services worldwide[3], including over $23 billion in revenues generated for the Americas[4], a substantial portion of which is generated in the United States each year. Lenovo maintains one of its dual headquarters in the United States. Lenovo also maintain a

---

[1] *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 20, 28, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf
[2] "Lenovo was included in the inaugural list of America's Dream Employers for 2025 by Forbes, in partnership with Statista. This recognition is a testament to the inclusive culture, the purposeful approach, and the positive environment that Lenovo fosters for its global employee base. Lenovo has received similar recognitions for being an employer of choice. In January 2024, employees voted Lenovo to be one of Glassdoor's Best Places to Work." *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 38, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf
[3] *Id.* at 4.
[4] *Id.* at 188.

pension plan – the "Lenovo Pension Plan" – for employees in the United States who were employees by IBM prior to being hired by Lenovo.[5]

4.      Officers or executives of Lenovo Group, Ltd. (and/or affiliates acting in concert with Lenovo Group, Ltd.) regularly work from and reside in the United States, including in Texas. These officers or executives include at least Laura Quatela, Kurt Skaugen, Matthew Zielinski (Austin, Texas)[6], Doug Fisher, and Arthur Hu. Such officers or executives are involved in the marketing, distribution, sale, import, and use of the Accused Products in the United States. For example, Laura Quatela "has been a Senior Vice President and Chief Legal Officer (subsequently re-designated as Chief Legal and Corporate Responsibility Officer in January 2023) of **the Group** since October 2016 and will retire from the current roles with effect from March 31, 2025. Ms. Quatela is responsible for the Group's legal, IP, government relations and ESG (environmental, social and governance) matters globally. She is a member of certain internal committees of **the Group** and a director of subsidiary(ies) of **the Company**. . . . Ms. Laura Green Quatela will retire as a Senior Vice President and Chief Legal and Corporate Responsibility Officer of **the Group** on March 31, 2025 and has been appointed as a non-executive director of **the Company** and a member of the Nomination and Governance Committee of **the Company**, with effect from April 1, 2025."[7] In the "Changes in Compositions of Board and Board Committees Change of Lead Independent Director and Change in Management," "the Company" is defined as Lenovo Group Ltd., and "the Group is defined as "the 'Company', together with its subsidiaries."[8]

---

[5] *Id.* at 157.

[6] *See* https://www.linkedin.com/in/matthew-zielinski/

[7] *See* https://www1.hkexnews.hk/listedco/listconews/sehk/2025/0221/2025022100143.pdf; *see also* https://news.lenovo.com/pressroom/press-releases/lenovo-cfo-waiming-wong-and-clo-laura-quatela-to-retire-appointed-non-executive-directors/

[8] *Id.*

5.     Lenovo Group Ltd. owns or controls, directly or indirectly, each of the Lenovo entities with which it coordinates the infringing sale, offer for sale, import, use, and manufacture of Accused Products in the United States, including the other products. Lenovo Group Ltd. operates and manages a global supply chain to develop, manufacture, and deliver accused computer products and mobile products to the United States, including Texas. At the direction or control of Lenovo Group Ltd., Accused Products are packaged, shipped, and sold to customers in the United States. Lenovo Group Ltd. reports U.S. sales of the accused products as its own. Lenovo Group Ltd. advertises that it manufactures most of its products in its own facilities, rather than through third parties. For example, on its website, Lenovo Group Ltd. states: "Ranked #8 in the Gartner Supply Chain Top 25, we serve more than 180 markets and manufacture the majority of our products in our own facilities. This hybrid model helps us bring new innovations to market efficiently while having greater control over product development and global supply chain for advantages in quality, security, and time-to-market."[9] On June 23, 2025, Lenovo posted a press release on its website that Gartner ranked it #8 on their list of Supply Chain Top 25 for 2025 report.[10] In the press release, Lenovo stated: "Lenovo's supply chain spans over 30 manufacturing sites in 11 markets across the Asia Pacific, China, Europe, the Middle East and Africa, **North America**, and South America regions. . . . Lenovo's global manufacturing footprint provides the ultimate flexibility and resilience, enabling the company to respond quickly and navigate any global situation effectively."[11] In the article, Ben Massie, Vice President of Global Supply Chain

---

[9] *See* https://www.lenovo.com/il/en/about/what-we-do/?orgRef=https%253A%252F%252Fwww.google.com%252F&srsltid=AfmBOoq7lSZcOXW prvgICt2vDkufUNpdmW2WIiChgc2YzvF4K0JwI3-6

[10] *See* https://news.lenovo.com/pressroom/press-releases/lenovo-ranks-8th-in-the-gartner-supply-chain-top-25-for-2025/

[11] *Id.*

for Lenovo's Infrastructure Solutions Group, based out of the United States, said: "As supply chains become more complex, staying resilient is no longer enough. Lenovo is now focused on becoming 'anti-fragile'—not just withstanding disruption but getting stronger because of it."[12]

6.    Defendant Lenovo (Shanghai) Electronics Technology Co., Ltd. ("Lenovo Shanghai") is a company organized under the laws of the People's Republic of China. Lenovo Shanghai has an office at No. 68 Building, 199 Fenju Road, Wai Gao Qiao Free Trade Zone, Shanghai, 200131, China, and may be served with process pursuant to the provisions of the Hague Convention. Lenovo Shanghai may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

7.    Lenovo Shanghai, an indirect subsidiary of Lenovo Group, Ltd., has been and is involved in the manufacturing and distribution of accused computer devices, mobile devices,  and other related products. Lenovo Shanghai has been and is involved in the manufacture of accused products that are eventually sold to Lenovo PC HK Ltd. or other companies, who then sells the accused products to Lenovo (United States) Inc. Lenovo Shanghai knows that the accused products it manufactures are intended for the United States market. Lenovo Shanghai has been and is involved in the shipping of accused products, such as notebook and desktop computers, to the United States—both directly and through intermediate Lenovo entities. Lenovo Shanghai has been and is involved in shipping at least some of the accused products to the United States under the direction or control of Lenovo PC HK Ltd. Lenovo Shanghai's role within the Lenovo group of companies includes applying for the necessary licenses and authorizations for accused computer

---

[12] *Id.*

products in the United States, including with the FCC, and obtaining the necessary UL certifications.

8.    Defendant Lenovo Information Products (Shenzhen) Co. Ltd. ("Lenovo Shenzhen") is a company organized under the laws of the People's Republic of China. Lenovo Shenzhen has an office at ISH2 Building, 3 Guanglan Road, Futian Free Trade Zone, Shenzhen, 518038, China, and may be served with Process pursuant to the provisions of the Hague Convention. Lenovo Shenzhen may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

9.    Lenovo Shenzhen, an indirect subsidiary of Lenovo Group, Ltd., is involved in the manufacturing and distribution of accused computer devices, mobile devices,  and other related products. Specifically, Lenovo has a "manufacturing center" in Shenzhen, China, operated by Lenovo Shenzhen. Lenovo Shenzhen has been and is involved in the manufacture of accused products that it sells to Lenovo PC HK Ltd., who then sells the accused products to Lenovo (United States) Inc. Lenovo Shenzhen knows that the accused products it manufactures are intended for the United States market. Further, Lenovo Shenzhen has been and is involved in the shipping of accused products, such as notebook and desktop computers, to the United States—both directly and through intermediate Lenovo entities. Lenovo Shenzhen has been and is involved in shipping at least some of the accused products to the United States under the direction or control of Lenovo Group, Ltd., and/or Lenovo PC HK Ltd.

10.    LCFC (Hefei) Electronics Technology Co., Ltd. d/b/a LC Future Center and Lenovo Compal Future Center ("LCFC Hefei") is a company organized under the laws of a foreign

jurisdiction. LCFC Hefei has an office at No. 3188-1, Yungu Road, Economic and Technological Development Zone Hefei, Anhui Province, 230601 China, and may be served with Process pursuant to the provisions of the Hague Convention. LCFC Hefei may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

11.     LCFC Hefei, an indirect subsidiary of Lenovo Group, Ltd., is involved in the manufacturing and distribution of accused computer devices, mobile devices,  and other related products. Over 60% of Lenovo laptops are manufactured by LCFC Hefei. Specifically, Lenovo has a "manufacturing center" in Hefei, China, operated by LCFC Hefei. LCFC Hefei has been and is involved in the manufacture of accused products that are eventually sold to Lenovo PC HK Ltd., who then sells the accused products to Lenovo (United States) Inc. LCFC Hefei knows that the accused products it manufactures are intended for the United States market. Further, LCFC has been and is involved in the shipping of accused products, such as notebook computers, to the United States—both directly and through intermediate Lenovo entities. LCFC Hefei has been and is involved in shipping at least some of the accused products to the United States under the direction or control of Lenovo Group, Ltd., and/or Lenovo PC HK Ltd.

12.     Lenovo Centro Tecnológico S. de R.L. de C.V. ("Lenovo Centro") is a company organized under the laws of Mexico. Lenovo Centro has an office at No. 316, Boulevard Escobedo, Apodaca Technology Park, Apodaca, Nuevo León, P.O. 66600, México, and may be served pursuant to the provisions of the Hague Convention. Lenovo Centro may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a

resident agent for service of process in Texas as required by statute. This action arises out of that business.

13.     Lenovo Centro, an indirect subsidiary of Lenovo Group, Ltd., is involved in the manufacturing, assembly, and testing of accused personal computers and other related products. Specifically, Lenovo has a "manufacturing center" in Monterrey, Mexico, operated by Lenovo Centro. Lenovo Centro has been and is involved in the manufacture of accused products that it sells to Lenovo PC HK Ltd., who then sells the accused products to Lenovo (United States) Inc. Lenovo Centro knows that the accused products it manufactures are intended for the United States market. Further, Lenovo Centro has been and is involved in the shipping of accused products, such as desktop computers, to the United States—both directly and through intermediate Lenovo entities. Lenovo Centro has been and is involved in shipping at least some of the accused products to the United States under the direction or control of Lenovo Group, Ltd. and/or Lenovo PC HK Ltd.

14.     Lenovo PC HK Ltd. ("Lenovo PC HK") is a company organized under the laws of Hong Kong SAR, China. Lenovo PC HK has an office at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong SAR, China and may be served pursuant to the provisions of the Hague Convention. Lenovo PC HK may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

15.     Lenovo PC HK, an indirect subsidiary of Lenovo Group, Ltd., is involved in the procurement, marketing, distribution, and sale of accused computer devices, mobile devices, , and other related products.  In particular, at the direction and control of Lenovo Group, Ltd., Lenovo

PC HK procures, makes, sells, offers for sale, imports, and uses accused products manufactured for the United States by Lenovo entities, such as LCFC Hefei and Lenovo Centro. That role includes providing manufacturers with designs and specifications of accused computer products destined for the United States.

16.     Further, Lenovo PC HK has been and is involved in the shipping of accused products, such as at least computers and tablets, to the United States—both directly and through intermediate Lenovo entities. Lenovo PC HK also has sold and sells accused Lenovo products, such as at least computers and tablets, to at least one U.S. distributor—Lenovo (United States) Inc.—who then re-sells them to Lenovo customers residing in the United States. Lenovo PC HK does the above activities at the instruction and under the supervision of Lenovo Group, Ltd. Defendants are aware that the Accused Products sold in the United States, such as to Lenovo (United States) Inc., are distributed throughout the United States, including in Texas, including at least Houston, Texas.

17.     For example, Lenovo Group Ltd.'s. "Standard Purchase Order Terms and Conditions" for Global Procurement available on its website states, "This Purchase Order ("PO") is issued by Lenovo PC HK Limited ("Lenovo") or one of its affiliates to Supplier."[13]

18.     Lenovo (Beijing) Limited ("Lenovo Beijing") is a company organized under the laws of China. Lenovo Beijing has an office at No. 6, Chuangye Road, Shangdi, Haidan District, Beijing 100085, China, and may be served with process pursuant to the provisions of the Hague Convention. Lenovo Beijing may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in

---

[13] *See* https://www.lenovo.com/us/en/global_procurement/po-terms-and-conditions/

business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

19.    Lenovo Beijing is a subsidiary of Lenovo Group, Ltd.  Upon information and belief, Lenovo Beijing acts in concert with, and under the direction and control of, Lenovo Group, Ltd. and/or Lenovo PC HK to sell, offer for sale, import, use, and make the Accused Products in the United States. For example, Lenovo Beijing is the registrant of www.lenovo.com, through which the Lenovo Defendants sell the Accused Products directly to customers in the United States. Lenovo Beijing further operates the "Beijing Data Center to support Lenovo global core business." Upon information and belief, Lenovo Beijing, operating in concert with Lenovo Defendants, host www.lenovo.com from the "Beijing Data Center."

20.    Lenovo (Thailand) Limited ("Lenovo Thailand") is a company organized under the laws of Thailand. Lenovo Thailand has an office at 12th Floor, AIA Capital Center Building, No. 89 Ratchadaphisek Rd. Khwaeng Din Daeng, Khet Din Daeng, Bangkok 10400, Thailand, and may be served with process pursuant to international agreement. Lenovo Thailand may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

21.    Lenovo Thailand is a subsidiary of Lenovo Group, Ltd. Upon information and belief, Lenovo Thailand acts in concert with, and under the direction and control of, Lenovo Group, Ltd. and/or Lenovo PC HK to sell, offer for sale, import, use, and make the Accused Products in the United States. Upon information and belief, Lenovo Thailand is involved in the distribution of at least the smartphones and tablets accused herein of infringement.

| Lenovo (Thailand) Limited | Thailand | THB252,000,000 | **100%** | 100% | Distribution of IT products as well as mobile phone, smartphone and tablet, server and storage |
|---|---|---|---|---|---|

[14]

22.     Motorola Mobile Communication Technology Ltd. d/b/a Lenovo Mobile Communication Technology Ltd. ("Motorola Comm.) is now owned by and is known as Lenovo Mobile Communication Technology Ltd. organized under the laws of China, with a principal place of business located at No. 999 Qishan North 2nd Road, Information & Optoelectronics Park, Torch High-tech Industry Development Zone, Xiamen, P.R. China. Upon information and belief, Motorola Comm acts in concert with, and under the direction and control of, Lenovo Group, Ltd. and/or other Lenovo Group Ltd. subsidiaries/affiliates to sell, offer for sale, import, use, and make the Accused Products in the United States.  Motorola Comm. may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

23.     Motorola (Wuhan) Mobility Technologies Communication Company Limited ("Motorola Wuhan") is a wholly-owned subsidiary of Lenovo Group, Ltd. organized under the laws of China, with a principal place of business located at No. 19, Gaoxin 4th Road, Donghu New Technology Development Zone Wuhan, Hubei, 430205 China, and may be served with process pursuant to the provisions of the Hague Convention. Motorola Wuhan may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute.  This action arises out of that

---

[14]  *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 263, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf

business. Upon information and belief, Motorola Wuhan acts in concert with, and under the direction and control of, Lenovo Group, Ltd. and/or other Lenovo Group Ltd. subsidiaries/affiliates to sell, offer for sale, import, use, and make the Accused Products in the United States, including mobile products.[15] Upon information and belief, Motorola Wuhan is involved, either directly or indirectly in the manufacture of at least the mobile products accused herein of infringement.



24.    The Defendants identified in paragraphs 2 through 23 above (collectively, "Lenovo") are companies that together—with their affiliates—comprise one of the world's leading manufacturers of computers and computer-related products. Together, the Lenovo Defendants design, manufacture, use, import into the United States, sell, and/or offer for sale in the United States computer devices, mobile devices,  and other related products.  Lenovo's devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.

25.    The Lenovo Defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular. Defendants engage in coordinated and concerted action to direct the Accused Products throughout the United States, including Texas.

---

[15]    *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 262, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf
[16]    *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 262, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf

26.     The Lenovo Defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

27.     In the promotional materials, manuals, guides, terms of use, sales agreements, warranties, or similar documentation related to the accused products, the Lenovo Defendants regularly omit which specific Lenovo company or entity is responsible for the documents or associated products, or instead identify "Lenovo" or the "Lenovo Group". As a result, customers of the accused products understand that Lenovo Group, Ltd. or the Lenovo Group as a whole, makes and sells the Accused Products.

28.     Lenovo Group Ltd., and Lenovo as a whole, holds itself out as the entity that manufactures, sells, offers to sell, imports, and uses the Accused Products in the United States, including Texas.  For example, the privacy statement of www.lenovo.com states that "[t]his privacy statement applies to data collected through websites owned and operated by Lenovo Group Ltd. and its affiliated group companies ("Lenovo")."[17] Lenovo sells and offers for sale products through its U.S. website, and "Lenovo" (*i.e.* "Lenovo Group Ltd. and its affiliated group companies") imposes the terms of a "Lenovo Sales Agreement" on all customers, including customers within the United States and Texas.[18] Lenovo Group, Ltd., and Lenovo as a whole, sell the Accused Products directly to customers in the United States, including within Texas, through www.lenovo.com/us/en.

29.     Upon information and belief, Lenovo Group Ltd. employees and agents, including those of its subsidiaries named herein, regularly travel to the United States and Texas to test,

---

[17] https://www.lenovo.com/us/en/privacy/; *see also* lenovo.com/us/en/legal/ ("The following are terms between you and Lenovo ("we," "us," or "our")."
[18] https://www.lenovo.com/us/en/terms-and-conditions/

develop, troubleshoot, and demonstrate the Accused Products. For example, "[d]uring FY2024/25, Lenovo launched Lenovo Tech World under the theme 'Smart AI for All' across global locations, including *Seattle, Washington, United States*, showcasing latest innovations like AI PCs and Neptune Liquid Cooling technology and strategic initiatives driving Lenovo's AI vision. The event featured keynotes from global tech leaders on AI, computing and industry trends, insights on collaborative innovation with partners and customers. *Directors who participated in the event* gained valuable insights on market trends, Lenovo's innovative approaches to industry challenges, and strategic initiatives driving sustainable growth. These engagements strengthened their ability to provide informed oversight of Lenovo's technology advancement and long-term corporate vision."



[19]

---

[19]  *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 76, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf

Lenovo has held the Tech World event for ten (10) consecutive years.[20]

30.     By way of further example, "[i]n FY2024/25, directors participated in immersive site visits to key Lenovo facilities including ***Motorola's Chicago laboratory***, Hefei's LCFC factory, and Shenzhen plant."



31.     By way of further example, "In order to keep ***directors*** updated with the latest technologies and products development in the industry, ***directors were invited to attend Consumer***

20 *See* https://news.lenovo.com/pressroom/press-releases/techworld24/ ("On October 15, 2024, Lenovo will host its annual global innovation event, Tech World, in Bellevue, Washington. This marks the 10th consecutive year of the event and reflects a decade of innovation and transformation from the company."
21 *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 77, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf

***Electronic Show (CES) in Las Vegas in January 2025*** and Mobile World Congress (MWC) in Barcelona in March 2025. These two events provided the best product reviews, ***demonstrations and displays*** that showcase the technologies leveraging the power of AI both from the Group and other market players."



22. Upon information and belief, Lenovo Group Ltd. also directly maintains Lenovo Research and the Advanced AI Technology Center. "In April 2025, Lenovo established its CTO Organization to spearhead the company's technology strategy, coordinate global R&D efforts, and accelerate the commercialization of innovations. The organization is anchored by two major R&D

---

[22] *Id.* at 78.

engines: Lenovo Research and the Advanced AI Technology Center (AAITC). Founded in 1999, Lenovo Research has been powering Lenovo's high-tech products and services with cutting-edge technologies. The AAITC, launched in 2025, serves as Lenovo's hub for applied AI technologies."[23] Moreover, the "Lenovo CTO Organization is a global corporate R&D institution with research centers located in Beijing, Shanghai, Shenzhen, Tianjin, and Wuhan in China; **Raleigh, Chicago**, and **Silicon Valley** in the United States; and Yokohama, Japan."[24] In 2010, Lenovo Research developed Lenovo's first smartphone – Le Phone.[25] The head of the Lenovo CTO Organization is Tolga Kurtoglu[26], who is also the Senior Vice President and Chief Technology Office of Lenovo Group Ltd.[27], and is based out of the United States.[28] Many of the technologies developed by at least Lenovo Research have been demonstrated in the United States, including at CES in Las Vegas.[29]

33.    The Lenovo Defendants named above and their affiliates operate as a unitary business venture and are both jointly and severally liable for the acts of patent infringement alleged herein.

---

[23] https://research.lenovo.com/webapp/view_English/home.html
[24] https://research.lenovo.com/webapp/view_English/newsDetails.html?id=147
[25] *Id.*
[26]
https://research.lenovo.com/webapp/view_English/home.html#:~:text=Tolga%20Kurtoglu,in%E2%80%9D%20lifestyle%20for%20global%20users.
[27]    *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 12, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf
[28] https://www.linkedin.com/in/tolga-kurtoglu/
[29] https://news.lenovo.com/pressroom/press-releases/at-the-2024-international-consumer-electronics-show-ces-which-opened-in-las-vegas-u-s-on-jan-9-lenovo-showcased-many-new-products-and-solutions-many-of-the-products-and-solutions-are-equipped/

## JURISDICTION AND VENUE

34.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

35.     This Court has personal jurisdiction over Defendants. Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States. Defendants, directly and/or through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Patents-in-Suit. Courts in Texas, including within this Judicial District, have concluded that at least Lenovo Group Ltd. is subject to personal jurisdiction in the State of Texas. *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Ltd.] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over Lenovo Grp. Ltd.] would not offend traditional notions of fair place and substantial justice."). These prior decisions were recently confirmed in this District in *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760 (E.D. Tex. Oct. 17, 2024) and *Eireog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-CV-00239-JRG, 2024 WL 4519763, at *1 (E.D. Tex. Oct. 17, 2024). To the extent at least Lenovo Group Ltd. has or will seek to contest personal jurisdiction, the Federal Circuit denied Lenovo Group Ltd.'s requests for a writ of mandamus seeking to challenge the findings of courts in this District, based

on "open factual disputed as to whether [Lenovo] created, controls, or directs its subsidiaries to place the allegedly infringing products into the stream of commerce in Texas." *In re Lenovo Grp. Ltd.*, No. 2025-111, 2025 WL 685914, at *1 (Fed. Cir. Mar. 4, 2025).

36.      Lenovo induces its subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or import throughout the United States, including within this Judicial District, infringing products and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. Paragraphs 2 through 33 are incorporated by reference as if fully set forth herein. Lenovo purposefully directs the infringing products identified herein into established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the infringing products through its websites, Lenovo.com[30] and Motorola.com, which may be accessed throughout the United States, the State of Texas, and this Judicial District. Additionally, Lenovo has authorized sellers and sales representatives that offer for sale and sell the infringing products throughout the State of Texas and to consumers throughout this District, including at the following locations in this District: Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop 281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview, Texas 75605; Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670; Verizon, 500 E Loop 281, Longview, TX 75670; AT&T, 1712 E Grand Ave, Marshall, TX 75670; T-Mobile, 1806 E. End Blvd., N. Ste 100, Marshall, TX 75670.

---

[30]  The  Lenovo  website  is  maintained  by  Lenovo  Beijing  Limited.  *See* https://www.whois.com/whois/lenovo.com

37.    Lenovo maintains regular and established places of business in in this Judicial District, the State of Texas, and elsewhere in the United States, including a Sales Office in Fort Worth, Texas.[31] Lenovo also advertises for jobs in the State of Texas.[32] Lenovo also maintains Lenovo Authorized Service Providers (ASPs) in this Judicial District, the State of Texas, and elsewhere in the United States.



---

[31]https://www.lenovo.com/us/en/about/locations/?orgRef=https%253A%252F%252Fwww.googl e.com%252F&cid=us:sem|se|google|pmax_smb_pcs||||18337003604|||shopping|mix|commercialc onsumer&gad_source=1&gclid=CjwKCAjwvvmzBhA2EiwAtHVrb-yDPR8mEb0OOJoQq7k6lSpSZJTL4W1Ucy0kqq6ZBDwyz4H5zd7rSBoC6NQQAvD_BwE

[32]    *See,  e.g.,*  https://jobs.lenovo.com/en_US/careers/JobDetail/Global-Account-Manager/67745 ("This role is based in Houston, Texas. As a Global Account Manager for the Energy / Oil & Gas vertical, you will be responsible for driving strategic engagement, revenue growth, and long-term partnership with key global clients in the sector. This high-impact role requires a deep understanding of the industry's unique challenges and technology needs, coupled with strong relationship management and commercial acumen. You will serve as the primary interface between Lenovo and executive-level stakeholders across customer accounts, orchestrating cross-functional collaboration to deliver One Lenovo solutions.").

Defendant also maintains authorized resellers of its products in this Judicial District, in the State of Texas, and throughout the United States.

---

[33] *See, e.g.,* https://support.lenovo.com/us/en/lenovo-service-provider  Displaying result for "Warranty and Support Provider" for "Home" within 500 miles of 200 W Houston St, Marshall, TX 75670, USA. ("A Lenovo Service Center is an authorized facility where customers can seek professional assistance for their Lenovo devices.  These centers employ trained technicians who specialize in Lenovo products and provide services such as diagnostics, repairs, hardware upgrades, and software installations.").[33]



At these various locations, Lenovo maintains authorized sellers, sales representatives, and customer service agents that offer, sell, and service Defendant's products in this Judicial District, the State of Texas, and elsewhere in the United States.

38.    Furthermore, Lenovo Group Ltd. provides "Hardware Maintenance Manuals" for the Accused Products in the United States which bear a "Lenovo" copyright without specifying any particular Lenovo entity, and which are "delivered pursuant to a General Services Administration "GSA" contract. These manuals specify that they are "printed in China."  These

---

[34] *Id.* Search results for "Reseller" for "Business" within 500 miles of 200 W Houston St, Marshall, TX 75670, USA.

English language manuals demonstrate Lenovo's knowledge and intent that for the Accused Products to be sold throughout the United States, including Texas.

39.    In addition, or in the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2), including Lenovo Group Ltd.

40.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants do not reside in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

41.    Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

42.    On November 8, 2022, the United Stared Patent and Trademark Office duly and legally issued U.S. Patent No. 11,493,794 (the "'794 Patent") entitled "Electronic Device and Method of Manufacturing 1he Same".  A true and correct copy of the '794 Patent is available at: https://patentimages.storage.googleapis.com/10/65/b0/2660bab0ac4f80/US11493794.pdf.

43.    On March 28, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,606,675 (the "'675 Patent") entitled "Capacitive Touch Panel".  A true and correct copy of the '675 Patent is available at: https://patentimages.storage.googleapis.com/56/ba/cd/ea2cdb44d2154d/US9606675.pdf.

44.    On July 19, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,395,857 (the "'857 Patent") entitled "Capacitive Touch Panel".  A true

and correct copy of the '857 Patent is available at: https://patentimages.storage.googleapis.com/0b/3a/c4/73390cafbf9102/US9395857.pdf.

45.     On July 9, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,482,542 (the "'542 Patent") entitled "Capacitive Touch Panel". A true and correct copy of the '542 Patent is available at: https://patentimages.storage.googleapis.com/ee/b6/f2/3b55516052e749/US8482542.pdf.

46.     Alpha Touch is the sole and exclusive owner of all right, title, and interest in the '794 Patent, the '675 Patent, the '857 Patent, and the '542 Patent, (collectively, the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Alpha Touch also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

47.     Alpha Touch has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

48.     The Patents-in-Suit generally relate to methods and apparatuses related to touch screens and displays on electronic devices. Infringing products made, used, offered for sale, sold, and/or imported into the United States by Defendants include, but at not limited to, the following: Tab M8, Tab M10, Tab M7 (2nd Gen),Tab M8 (2nd Gen), Tab M10 FHD Plus (2nd Gen), Tab P11, Tab P11 Plus, Yoga Tab 11, Yoga Tab 13, Tab P11 Pro (Gen 2), Tab M10 Plus (Gen 3), Tab P12, Tab M9, Tab P11/P11 Plus, Moto G7 family, Moto Z4, Motorola One series, Razr (2019), Moto G Power (2020), Moto G Stylus (2020), Moto G Fast (2020), Edge+ (2020), Edge (2020),

Razr 5G (2020), Moto E (2020), Moto G Stylus (2021), G Power (2021), G Play (2021), G Stylus 5G (2021), Moto G Pure (2021), Edge (2021)/Edge 5G UW, One 5G Ace (2021),  One 5G UW Ace, Edge+ (2022), Edge (2022), Moto G Stylus (2022), G Stylus 5G (2022), G Power (2022), G 5G (2022), Razr+ (2023), Razr (2023), Edge+ (2023), Moto G Power 5G (2023), G Stylus (2023), G Stylus 5G (2023), G 5G (2023), G Play (2023), Razr+ (2024), Edge (2024), Moto G Stylus (2024), G Power 5G (2024), G Play (2024), Razr Ultra (2025), Moto G Stylus (2025), Moto G Power (2025), ZUK Series, S Series, K Series, Legion Series, P Series, Z Series, VIBE Series, A Series, Yoga / Yoga 2-in-1 series, IdeaPad / IdeaPad 2-in-1 / Flex / Slim, ThinkPad / ThinkPad Yoga / X / T / P / L series, ThinkBook / Legion, Yoga Book series, including all prior iterations, variations, generation, and sub-models (collectively, the "Accused Products").

49.     The '794 Patent relates to technology electronic devices with a cover plate, a touch sensing layer, and a display module. The technology described in the '794 Patent was developed by Chun Yan Wu, Jen-Chang Liu, Tai-Shih Cheng, and Lien-Hsin Lee at TPK Advanced Solutions Inc. For example, the patented technology is implemented in infringing Lenovo devices with flexible displays, or the equivalent thereof, including, but not limited to, the smartphones, tablets, and computers made, used, offered for sale, sold, and/or imported into the United States since 2019, such as the Accused Products.

50.     The '675 Patent, the '857 Patent, and the '542 Patents relate to electronic devices with capacity touch panels. The technology described in the '657 Patent was developed by Chen-Yu Liu and Kwan-Si Ho at TPK Touch Solutions Inc. The technology described in the '857 Patent and the '542 Patent was developed by Jason Wu, Yen-Chung Hung, Ruey-Shing Weng, and Chih-Chang Lai at TPK Touch Solutions Inc. For example, the patented technology is implemented in infringing Lenovo devices with capacitive touch displays, or the equivalent thereof, including, but

not limited to, the smartphones, tablets, and computers made, used, offered for sale, sold, and/or imported into the United States since 2019, such as the Accused Products.

51.     Lenovo has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, to smartphones, tablets, and computers.

## COUNT I
### (Infringement of the '794 Patent)

52.     Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

53.     Alpha Touch has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '794 Patent.

54.     Defendants have and continue to directly infringe the '794 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '794 Patent. Such infringing products include Lenovo smartphones, tablets, and computers, including, but not limited to, the Motorola Razr+ Ultra, among other Lenovo products.

55.     For example, Defendants have and continue to directly infringe at least claim 1 of the '794 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include Lenovo smartphones, Accused Products, including, but not limited to, the Moto Razr 50, among other products. The Motorola Razr+ Ultra is exemplary, and representative of how the other Accused Products infringe the '794 Patent.

56.    The Motorola Razr+ Ultra[35] comprises an electronic device, comprising: a cover plate. For example, the Motorola Razr+ Ultra display includes multiple layers. The Ultra-Thin Glass (UTG), used as the glass layer, is laminated between two protective layers (e.g., a cover plate): the resin film and a second layer attached to the bottom surface, which are transparent covering layers. These layers work to enhance the flexibility and resilience of foldable display. Beneath these layers, the AMOLED display module serves as the main display, which also includes the touch sensing functionality.



[36]

[35] On information and belief, the Motorola Razr+ Ultra is the U.S. name for the internationally marketed phones, such as the Motorola Razr 50 and 60. *See* https://motorolanews.com/the-new-generation-of-motorola-razr-is-here-with-the-most-powerful-flip-phone-in-the-world-elevating-every-experience-with-moto-ai/; https://www.prnewswire.com/news-releases/motorola-announces-next-gen-motorola-razr-family-in-north-america-introducing-ai-powered-flip-phones-across-three-tiers-302436469.html; https://www.androidheadlines.com/motorola-razr-2025
[36] https://www.motorola.com/us/en/p/phones/razr/razr-ultra/pmipmhn40ms?pn=PB770067US&tab=techspecs



Nippon Electric Glass Co., Ltd. (Head Office: Otsu, Shiga, Japan; President: Akira Kishimoto; "NEG"), a specialized glass manufacturer, has announced that its "Dinorex UTG™" ultra-thin glass for chemical strengthening has been adopted for the display cover glass of Motorola Mobility LLC.'s (hereafter referred to as Motorola) new foldable smartphone, the motorola razr 50 series, which was unveiled on June 25, 2024.



Dinorex UTG™ is used for the main display of the motorola razr 50 series when the device is unfolded.
razr50  :  https://motorolanews.com/new-motorola-razr-family-2024/

---

[37] https://www.motorola.com/us/en/p/phones/razr/razr-ultra/pmipmhn40ms?pn=PB770067US&tab=techspecs

**About Dinorex UTG™**



"Dinorex UTG™" ultra-thin glass for chemical strengthening adopted in the motorola razr 50 series.
Despite being glass, it can be bent to a radius of 3mm (R1.5) or less.

"Dinorex UTG™" the ultra-thin glass for chemical strengthening produced and supplied by our company was developed to protect the display screens of flexible devices* like foldable smartphones from scratches and impact shocks. "Dinorex UTG™" is formed using our technology cultivated in the manufacturing of display glass used in LCD TVs, offering high surface smoothness, uniform thickness, and excellent bending characteristics. This makes it possible to achieve highly reliable foldable displays.[38]

---

[38] https://www.neg.co.jp/uploads/sites/2/news_20240806_en-3.pdf

Dinorex™ is glass for chemical strengthening developed for use as cover glass for mobile handsets such as smartphones and tablets, onboard vehicle displays, and other new applications. Dinorex™ protects such devices from impact shocks and scratches.

## Features
- **Dinorex™ T2X-1**
  - Superior chemical strengthening properties (High CS, Deep DOL)
  - High productivity
  - High transmittance
- **Dinorex™ T2X-7**
  - Original chemical strengthening technology (DIOX)
  - High drop strength on rough surfaces
  - Optimized for 3D molding





Dinorex™ in various processed forms

39

## Ultra-thin Glass Laminated on Resin Lamion™[Flexible Type]

Category: Solution
Exhibitor: NIPPON ELECTRIC GLASS CO., LTD.
Booth No: L818

### Characteristic

Lamion™ [Flexible Type], a hybrid material which consists of Ultra-thin Glass G-Leaf™ and resin film, has the advantages of both glass and resin, such as scratch resistance, high gas barrier property, lightweight and shock resistance. It is used for NIL (Nanoimprint Lithography) mold, OLED displays, etc.

40

---





57.    The Motorola Razr+ Ultra comprises a glass layer having a first surface and a second surface; and at least one transparent covering layer disposed on and in contact with at least one of the first surface or the second surface of the glass layer and laminated with the glass layer, wherein: the at least one transparent covering layer comprises a first transparent covering layer

---

[41] https://www.youtube.com/watch?v=VcjzstgVJ28&t=416s

and a second transparent covering layer, and the glass layer is laminated between the first transparent covering layer and the second transparent covering layer. For example, the Motorola Razr+ Ultra comes with a cover plate (e.g., the glass layer and transparent layers) embedded on top of its main display. By way of further example, the Motorola Razr+ Ultra uses a glass layer (e.g., Ultra-Thin Glass (UTG)) in its foldable displays. The glass layer (e.g., the UTG) has two surfaces (e.g., a first and second surface). The first surface (e.g., the top/first layer) has a first transparent covering layer (e.g., the top/first layer of the UTG coated with a protective/resin film) and a second transparent layer (e.g., the bottom/second layer coated with a material that can absorb light rays, such as a polarizer). The resin film (which is polymer film) is a transparent layer placed on top of the UTG that helps shield the UTG and maintain durability.



Nippon Electric Glass Co., Ltd. (Head Office: Otsu, Shiga, Japan; President: Akira Kishimoto; "NEG"), a specialized glass manufacturer, has announced that its "Dinorex UTG™" ultra-thin glass for chemical strengthening has been adopted for the display cover glass of Motorola Mobility LLC.'s (hereafter referred to as Motorola) new foldable smartphone, the motorola razr 50 series, which was unveiled on June 25, 2024.

Dinorex UTG™ is used for the main display of the motorola razr 50 series when the device is unfolded.
razr50 ： https://motorolanews.com/new-motorola-razr-family-2024/

---

[42] https://www.neg.co.jp/uploads/sites/2/news_20240806_en-3.pdf

## Ultra-thin Glass Laminated on Resin Lamion™[Flexible Type]

Category: Solution
Exhibitor: NIPPON ELECTRIC GLASS CO., LTD.
Booth No: L818

### Characteristic

Lamion™ [Flexible Type], a hybrid material which consists of Ultra-thin Glass G-Leaf™ and resin film, has the advantages of both glass and resin, such as scratch resistance, high gas barrier property, lightweight and shock resistance. It is used for NIL (Nanoimprint Lithography) mold, OLED displays, etc.

43



---

43 https://www.touchtaiwan.com/display/en/visitorProductDetail.asp?no=145671



58.     The Motorola Razr+ Ultra comprises a touch sensing layer disposed under the cover plate. For example, the touch sensing layer is part of the AMOLED display used in Motorola Razr+ Ultra. By way of further example, the cover plate can be a separate layer.

---

[44] https://www.youtube.com/watch?v=VcjzstgVJ28&t=416s

Nippon Electric Glass Co., Ltd. (Head Office: Otsu, Shiga, Japan; President: Akira Kishimoto; "NEG"), a specialized glass manufacturer, has announced that its "Dinorex UTG™" ultra-thin glass for chemical strengthening has been adopted for the display cover glass of Motorola Mobility LLC.'s (hereafter referred to as Motorola) new foldable smartphone, the motorola razr 50 series, which was unveiled on June 25, 2024.



Dinorex UTG™ is used for the main display of the motorola razr 50 series when the device is unfolded.

razr50 ： https://motorolanews.com/new-motorola-razr-family-2024/

[45]

---

### Ultra-thin Glass Laminated on Resin Lamion™[Flexible Type]

Category: Solution
Exhibitor: NIPPON ELECTRIC GLASS CO., LTD.
Booth No: L818

#### Characteristic

Lamion™ [Flexible Type], a hybrid material which consists of Ultra-thin Glass G-Leaf™ and resin film, has the advantages of both glass and resin, such as scratch resistance, high gas barrier property, lightweight and shock resistance. It is used for NIL (Nanoimprint Lithography) mold, OLED displays, etc.

[46]

---

[45] https://www.neg.co.jp/uploads/sites/2/news_20240806_en-3.pdf
[46] https://www.touchtaiwan.com/display/en/visitorProductDetail.asp?no=145671





59.     The Motorola Razr+ Ultra comprises a display module disposed under the touch sensing layer. For example, the Motorola Razr+ Ultra's AMOLED display serves as the display module layer under the touch sensing layer.

---

[47] https://www.youtube.com/watch?v=VcjzstgVJ28&t=416s



**display**

| Aspect Ratio | Display Size | Display Technology |
|---|---|---|
| 22:9 | Main display | Main display |
| | 7.0"1224p Super HD display | LTPO |
| | External display | Foldable AMOLED |
| | 4.0"" pOLED display | HDR10+ |
| | | 10-bit |
| | | 120% DCI-P3 color gamut |
| | | Up to 165Hz refresh rate |
| | | Touch rate: 130Hz/300Hz (game mode only) |
| | | Peak Brightness: 4500nit[20] |
| | | Dolby Vision |
| | | External display |
| | | LTPO |
| | | Flexible AMOLED |
| | | HDR10+ |
| | | 10-bit |
| | | 100% DCI-P3 color gamut |
| | | Up to 165Hz refresh rate |
| | | Touch rate: 120Hz/165Hz (game mode only) |
| | | Peak Brightness: 3000nit |

| Resolution | Screen to Body Ratio |
|---|---|
| Main display | Active Area-Body: 86.2% |
| Super HD (2992 x 1224) | |
| 464ppi | |
| External display | |
| 1272 x 1080 | |
| 417ppi | |

[48]



Nippon Electric Glass Co., Ltd. (Head Office: Otsu, Shiga, Japan; President: Akira Kishimoto; "NEG"), a specialized glass manufacturer, has announced that its "Dinorex UTG™" ultra-thin glass for chemical strengthening has been adopted for the display cover glass of Motorola Mobility LLC.'s (hereafter referred to as Motorola) new foldable smartphone, the motorola razr 50 series, which was unveiled on June 25, 2024.

Dinorex UTG™ is used for the main display of the motorola razr 50 series when the device is unfolded.

razr50 : https://motorolanews.com/new-motorola-razr-family-2024/

---

[48] https://www.motorola.com/us/en/p/phones/razr/razr-ultra/pmipmhn40ms?pn=PB770067US&tab=techspecs

**Dinorex™ is glass for chemical strengthening developed for use as cover glass for mobile handsets such as smartphones and tablets, onboard vehicle displays, and other new applications. Dinorex™ protects such devices from impact shocks and scratches.**

## Features

● **Dinorex™ T2X-1**
· Superior chemical strengthening properties (High CS, Deep DOL)
· High productivity
· High transmittance

● **Dinorex™ T2X-7**
· Original chemical strengthening technology (DIOX)
· High drop strength on rough surfaces
· Optimized for 3D molding





Dinorex™ in various processed forms

49

## Ultra-thin Glass Laminated on Resin Lamion™[Flexible Type]

Category: Solution
Exhibitor: NIPPON ELECTRIC GLASS CO., LTD.
Booth No: L818

### Characteristic

Lamion™ [Flexible Type], a hybrid material which consists of Ultra-thin Glass G-Leaf™ and resin film, has the advantages of both glass and resin, such as scratch resistance, high gas barrier property, lightweight and shock resistance. It is used for NIL (Nanoimprint Lithography) mold, OLED displays, etc.

50

---

[49] https://www.neg.co.jp/en/assets/file/product/dp/en-dinorex.pdf
[50] https://www.touchtaiwan.com/display/en/visitorProductDetail.asp?no=145671





[51] https://www.youtube.com/watch?v=VcjzstgVJ28&t=416s



moto razr 50 Ultra's inner screen adopts a 6.9-inch AMOLED screen, LTPO substrate gives the screen 1-165Hz adaptive high refresh rate, the screen's resolution reaches 2640*1080, 413PPI, supports 120% DCI-P3 color gamut display, and passed the SGS low blue light eye protection certification. [52]

60.    Defendants have and continue to indirectly infringe one or more claims of the '794 Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as the Accused Products.

61.    Defendants, with knowledge that these products, or the use thereof, infringe the '794 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '794 Patent by providing these products to end users for use in an infringing manner. Alternatively, on

---

[52] https://www.vopmart.com/blog/post/motorola-moto-razr-50-ultra-review.html?srsltid=AfmBOoqhzRDuG227x_zV-2SZo5SWXX4BwQ54p8arDrnMYjw287sipBu6

information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '794 least as early as the issuance of the '794 Patent.

62.     Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '794 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[53] For example, on the Motorola website, user guides are provided, which instruct users to, among other things, operate Motorola devices as follows: "Set up phone," "Learn the basics," "Personalize your phone," "Use apps," "Contacts, calls, voicemail," "Music," "Settings," and "Fix issues."[54] By way of further example, under "Learn the basics," users can select "Get around your phone," which instructs users to "Learn gestures," "Move between apps and screens," "Use quick settings," "Turn screen off and on," and "Turn off phone."[55] At least this portion of the User Manual, among others, instructs customers and end-users to use the Motorola Razr+ Ultra's display, which causes the customers and end-users to directly infringe the '794 Patent.[56]

---

[53] *See, e.g.,* Motorola Razr+ Ultra (2025) User Guide, available at: https://en-us.support.motorola.com/app/answers/detail/a_id/186129/~/user-guide-%28html%29-%7C-motorola-razr-ultra---2025
[54] *See id.*
[55] *See id.*
[56] *See id.*



63.    On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, User Manuals for their specific products. On information and belief, Defendants' User Manuals and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. For example, the Quick Start Guide for the Motorola Razr 60 Ultra (the international marketing name for the Motorola Razr+ Ultra) states that it was "Printed in China," and it is substantially similar to the Quick Start Guide made available in the United States.

---

[57] *See id.*



64.    Because of Defendants' inducement, Defendants' customers and end-users use Accused Products in a way Defendants intend and directly infringe the '794 Patent. Defendants perform these affirmative acts with knowledge of the '794 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '794 Patent.

65.    Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '794 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '794 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '794 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '794 Patent. The Accused Components include,

---

[58]    https://media.f-mobil.cz/document/148526/motorola-razr-60-ultra-uk-gsg-en-gb-ssc8e69746-b.pdf

but are not limited to, Defendants' flexible display screens in the Accused Products, and the components thereof. Defendants perform these affirmative acts with knowledge of the '794 Patent and with intent, or willful blindness, that they cause the direct infringement of the '794 Patent.

66.    Alpha Touch has suffered damages as a result of Defendants' direct and indirect infringement of the '794 Patent in an amount to be proven at trial.

67.    Alpha Touch has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '794 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

### COUNT II
### (Infringement of the '675 Patent)

68.    Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

69.    Alpha Touch has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '675 Patent.

70.    Defendants have and continue to directly infringe the '675 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '675 Patent. Such infringing products include Lenovo smartphones, tablets, and computers, including, but not limited to, the IdeaPad Flex 5 Chrome 14IAU7 (Plus), among other Lenovo products.

71.    For example, Defendants have and continue to directly infringe at least claim 1 of the '675 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Accused Products, including, but not limited to, the IdeaPad Flex 5 Chrome 14IAU7 (Plus), among other products. The IdeaPad Flex 5 Chrome 14IAU7 (Plus) is exemplary and representative of how the other Accused Products infringe the '675 Patent.

72.    The IdeaPad Flex 5 Chrome 14IAU7 (Plus) comprises a capacitive touch panel comprising: a substrate made of glass or plastic material having a first surface and a second surface. For example, the IdeaPad Flex 5 Chrome 14IAU7 (Plus) uses a One Glass Solution (OGS) technology-based touchscreen display. By way of further example, the IdeaPad Flex 5 Chrome 14IAU7 (Plus) has a capacitive touch display. By way of further example, the OGS touch sensor is directly fabricated on a second surface (e.g., the inner surface of the display) of a substrate made of glass or plastic material (e.g., cover glass) and a first surface (e.g., the outer surface of the display) of the glass used for touch input.





⁵⁹ https://psref.lenovo.com/syspool/Sys/PDF/IdeaPad/IP_Flex_5_Chrome_14IAU7
_Plus/IP_Flex_5_Chrome_14IAU7_Plus_Spec.pdf

## Specifications

**Lenovo IP Flex 5 Chrome 14IAU7 Plus**



**Processor:**
Intel Core i3-1315U 6 x 0.9 - 4.5 GHz, Raptor Lake-U

**Graphics adapter:**
Intel UHD Graphics 64EUs (Alder Lake 12th Gen)

**Memory:**  8 GB 🟨, DDR4-4266

**Display:**  14.00 inch 16:10, 1920 x 1200 pixel 162 PPI, Capacitive, IPS, glossy: yes

**Storage:**  128 GB eMMC Flash, 128 GB 🟥

**Connections:**  1 USB 3.0 / 3.1 Gen1, 2 USB 3.1 Gen2, USB-C Power Delivery (PD), Audio Connections: 3.5mm, Card Reader: microSD

60



61



Sensor on Lens

One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers.

62

---

60 https://www.notebookcheck.net/Lenovo-IP-Flex-5-Chrome-14IAU7.777199.0.html
61 https://www.topwaydisplay.com/en/blog/LCD-capacitive-touch-screen-technologies
62 https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html



73.    The IdeaPad Flex 5 Chrome 14IAU7 (Plus) comprises a sensing circuit. For example, in an OGS display, a touch sensor circuit can be directly fabricated on the inner sider of the cover glass.



---

[63] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/

[64] https://www.topwaydisplay.com/en/blog/LCD-capacitive-touch-screen-technologies



Sensor on Lens

One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers. [65]



74.     The IdeaPad Flex 5 Chrome 14IAU7 (Plus) comprises a physical tactical imputing integration having a peripheral masking area and having the first surface for receiving the physical tactile input and the second surface for forming said sensing circuit. For example, OGS touch panels can integrate a physical tactile inputting architecture over the surface of the cover glass with

---

[65] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html
[66] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/

a second surface for forming said sensing circuit (e.g., the inner side fabricated circuitry, sensing electrodes used to sense that tactile touch input). By way of further example, OGS-based panels also include a masking area associated with and/or located by the sensors.



67



67

---

[67] https://www.topwaydisplay.com/en/blog/LCD-capacitive-touch-screen-technologies
[68] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html



75.    The IdeaPad Flex 5 Chrome 14IAU7 (Plus) comprises a physical tactical imputing integration having a peripheral masking area and having the first surface for receiving the physical tactile input and the second surface for forming said sensing circuit, wherein there is no other substrate made of glass or plastic material laminated or bonded on the first surface of the substrate. For example, in OGS displays, the touch screen can be integrated directly with the protective glass. OGS displays allow for no other substrate made of glass or plastic material laminated or bonded on the first surface of the substrate (e.g., the ITO conductive layer can be coated directly onto the inner side of the protective glass, followed by coating and photolithography processes on the same glass).

---

[69] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/



76.    Defendants have and continue to indirectly infringe one or more claims of the '675 Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as the Accused Products.

77.    Defendants, with knowledge that these products, or the use thereof, infringe the '675 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '675 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the

---

[70] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/

'675 least as early as the issuance of the '675 Patent.

78.    Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '675 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[71] For example, on Lenovo's website, user guides are provided, which instruct users to, among other things, operate Lenovo devices. For the IdeaPad Flex 5 Chrome 14IAU7 (Plus), the User Guide instructs users on how to "Navigate the screen" at Chapter 3, pages 15 through 18.[72] The instructions include how to "Use the multi-touch screen," "Use the special keys," and "Use the touchpad." In at least Chapter 3, the User Manual, instructs customers and end-users to use the the IdeaPad Flex 5 Chrome 14IAU7 (Plus)'s display, which causes the customers and end-users to directly infringe the '675 Patent.

| Chapter 3.  Navigate the screen . . . . | 15 |
|---|---|
| Use the multi-touch screen  . . . . . . . . | 15 |
| Use the special keys .  . . . . . . . . . | 15 |
| Use the touchpad .  . . . . . . . . . . | 16 |

[73]

---

[71] *See, e.g.,* IdeaPad Flex 5 Chrome 14IAU7 (Plus) User Guide, available at: https://en-https://download.lenovo.com/km/dita/prod/202506/flex_5_cb_14iau7/77fc74560bd9657dc2b9744766204eab_flex_5_cb_14iau7/en/flex_5_cb_14iau7_ug_en.pdf

[72] *See id.* at i.

[73] *See id.*

79.    On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, User Manuals for their specific products. On information and belief, Defendants' User Manuals and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. For example, the IdeaPad Flex 5 Chrome 14IAU7 (Plus) was designed and manufactured by Defendants, and, therefore, Defendants are most familiar with its operations.

80.    Because of Defendants' inducement, Defendants' customers and end-users use Accused Products in a way Defendants intend and directly infringe the '675 Patent. Defendants perform these affirmative acts with knowledge of the '675 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '675 Patent.

81.    Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '675 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '794 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '794 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '794 Patent. The Accused Components include, but are not limited to, Defendants' display screens in the Accused Products, and the components thereof. Defendants perform these affirmative acts with knowledge of the '675 Patent and with

intent, or willful blindness, that they cause the direct infringement of the '675 Patent.

82.    Alpha Touch has suffered damages as a result of Defendants' direct and indirect infringement of the '675 Patent in an amount to be proven at trial.

83.    Alpha Touch has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '675 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

### COUNT III
### (Infringement of the '857 Patent)

84.    Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

85.    Alpha Touch has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '857 Patent.

86.    Defendants have and continue to directly infringe the '857 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '857 Patent. Such infringing products include Lenovo smartphones, tablets, and computers, including, but not limited to, the Motorola Moto G Power, among other Lenovo products.

87.    For example, Defendants have and continue to directly infringe at least claim 15 of the '857 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Accused Products, including, but not limited to, the Motorola Moto G Power, among other products. The Motorola Moto G Power is exemplary and representative of how the other Accused Products infringe the '857 Patent.

88.    The Motorola Moto G Power comprises a capacitive touch panel, comprising: a cover lens. For example, the Motorola Moto G Power has a "capacity touch panel (e.g., the LCD,

capacitive multi-touch display). By way of further example, the cover of the Motorola Moto G Power includes a cover lens (e.g., the display cover).





89.    The Motorola Moto G Power comprises a decoration layer disposed on a surface of the cover lens. For example, the Motorola Moto G Power has a decorative layer on the cover glass (e.g., the coating and/or layer on the cover lens).

---

[74] https://www.motorola.com/us/en/p/phones/moto-g/g-power-5g-gen-2/pmipmgh35m7?pn=PB000007US

[75] https://www.devicespecifications.com/en/model/9c7b5f64

[76] https://www.youtube.com/watch?v=Q0xxKuP7Ui4



90.    The Motorola Moto G Power comprises a color filter substrate disposed parallel to the cover lens. For example, the Motorola Moto G Power has an LCD screen, which includes a color filter substrate as part of the LCD structure. Based on the layout of the screen, the color filter layer is parallel to the cover lens.

> • **On-cell:** The touch sensor is an X-Y array of capacitive electrodes deposited on the top or bottom surface of the color- | filter substrate. Strictly speaking, when the electrodes are on the bottom surface of the substrate they are physically inside [78]

---

[77] https://www.youtube.com/watch?v=Q0xxKuP7Ui4
[78] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x



**Fig. 3:** *In this schematic illustration of voltage-sensing in-cell touch, two micro-switches are shown occupying a portion of one subpixel in the top view at left. The side view at right shows the implementation of a micro-switch using a conductive column spacer. Source: Samsung.* [79]



**Fig. 4:** *In the in-cell configuration for charge sensing, conductive column spacers for each pixel or group of pixels are located on the underside of the color-filter substrate, and there is a corresponding conductive electrode on the TFT-array substrate. Pressing the surface of the display causes the capacitance between the electrodes to change. Source: LG Display.* [80]

---

[79] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x
[80] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x



91.    The Motorola Moto G Power comprises an electrode layer disposed on the color filter substrate to perform touch-sensing operations. For example, the Motorola Moto G Power's LCD display (e.g., on-cell and/or in-cell technologies) includes an electrode layer on the color filter and can allow for touch sensing on the device.

- **On-cell:** The touch sensor is an X-Y array of capacitive electrodes deposited on the top or bottom surface of the color-      filter substrate. Strictly speaking, when the electrodes are on the bottom surface of the substrate they are physically inside [82]

---

[81] https://lcdscreenmfg.com/touchscreen-optical-bonding-incell-vs-oncell/
[82] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x



*Fig. 3:* In this schematic illustration of voltage-sensing in-cell touch, two micro-switches are shown occupying a portion of one subpixel in the top view at left. The side view at right shows the implementation of a micro-switch using a conductive column spacer. Source: Samsung. [83]



*Fig. 4:* In the in-cell configuration for charge sensing, conductive column spacers for each pixel or group of pixels are located on the underside of the color-filter substrate, and there is a corresponding conductive electrode on the TFT-array substrate. Pressing the surface of the display causes the capacitance between the electrodes to change. Source: LG Display. [84]

---

[83] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x
[84] https://sid.onlinelibrary.wiley.com/doi/10.1002/j.2637-496X.2010.tb00228.x

92.    The Motorola Moto G Power comprises at least one adhesive layer for binding the cover lens and the color filter substrate. For example, the Motorola Moto G Power's LCD display (e.g., on-cell and/or in-cell technologies) includes laminating the cover lens with the display screen using an optically clear adhesive (OCA) layer.

---

85 https://lcdscreenmfg.com/touchscreen-optical-bonding-incell-vs-oncell/



93. On information and belief, Nippon Electric Glass Co., Ltd., a known supplier of Lenovo display panels, cited to the '857 Patent Family in connection with its own PCT Application WO2015056690A1, entitled "Touch Panel, and Display-Device-Fitted touch Panel," filed on October 15, 2014.

94. Defendants have and continue to indirectly infringe one or more claims of the '857 Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as the Accused Products.

95. Defendants, with knowledge that these products, or the use thereof, infringe the '857 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '857 Patent by

---

[86] https://lcdscreenmfg.com/touchscreen-optical-bonding-incell-vs-oncell/

providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '857 least as early as the issuance of the '857 Patent.

96.     Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '857 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[87] For example, on Motorola's website, user guides are provided, which instruct users to, among other things, operate Lenovo devices. For the Motorola Moto G Power, the User Guide instructs users on how to "Navigate your phone" in the "Get Started Section, at pages 8 and 9. At least the "Navigate your phone" section of the User Manual, instructs customers and end-users to use the Motorola Moto G Power's display, which causes the customers and end-users to directly infringe the '857 Patent.

---

[87]    *See, e.g.,* Motorola Moto G Power User Guide, available at: https://en-us.support.motorola.com/ci/fattach/get/80904957/1681315978/redirect/1/filename/moto+g+power+5G.NA+Retail.UG.en-US.SSC8D88248-A_web.pdf

97.    On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, User Manuals for their specific products. On information and belief, Defendants' User Manuals and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. For example, the Motorola Moto G Power was designed and manufactured by Defendants, and, therefore, Defendants are most familiar with its operations.

98.    Because of Defendants' inducement, Defendants' customers and end-users use Accused Products in a way Defendants intend and directly infringe the '857 Patent. Defendants perform these affirmative acts with knowledge of the '857 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '857 Patent.

---

[88] *See id.*

99.     Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '857 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '857 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '857 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '857 Patent. The Accused Components include, but are not limited to, Defendants' display screens in the Accused Products, and the components thereof. Defendants perform these affirmative acts with knowledge of the '857 Patent and with intent, or willful blindness, that they cause the direct infringement of the '857 Patent.

100.    Alpha Touch has suffered damages as a result of Defendants' direct and indirect infringement of the '857 Patent in an amount to be proven at trial.

101.    Alpha Touch has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '857 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '542 Patent)

102.    Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

103.    Alpha Touch has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '542 Patent.

104.    Defendants have and continue to directly infringe the '542 Patent, either literally or

under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '542 Patent. Such infringing products include Lenovo smartphones, tablets, and computers, including, but not limited to, the Lenovo ThinkPad X1 Yoga Gen 8, among other Lenovo products.

105.    For example, Defendants have and continue to directly infringe at least claim 1 of the '542 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Accused Products, including, but not limited to, the Lenovo ThinkPad X1 Yoga Gen 8, among other products. The Lenovo ThinkPad X1 Yoga Gen 8 is exemplary, and representative of how the other Accused Products infringe the '542 Patent.

106.    The Lenovo ThinkPad X1 Yoga Gen 8 a capacitive touch panel comprising: a cover lens for assembly with a display panel. For example, the Lenovo ThinkPad X1 Yoga Gen 8 uses One Glass Solution (OGS) technology-based touchscreen display, which is a capacitive touch panel. By way of further example, the touch sensor in the OGS is directly fabricated on a cover glass (e.g., the protective glass cover) and laminated on the display panel.

**OGS/TOL Technology**

OGS technology is to integrate the touch screen with the protective glass, coats the ITO conductive layer on the inner side of the protective glass, and directly performs coating and photolithography on the protective glass. Since a piece of glass and one-time bonding are saved, the touch screen can be made thinner and less expensive. However, OGS still faces the problems of strength and processing cost, and both require secondary strengthening to increase strength. [89]

---

[89] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/

## ThinkPad X1 Yoga Gen 8

| 14" | WUXGA (1920x1200) | Multi-touch | IPS[3] | 500nits | Anti-glare | 16:10 |
|-----|-------------------|-------------|--------|---------|------------|-------|
| 14" | WQUXGA (3840x2400) | Multi-touch | OLED | 500nits | Anti-reflection, anti-smudge | 16:10 |

**Touchscreen**

OGS (One Glass Solution) multi-touch, supports 10-point touch [90]

## In-Cell, On-Cell and OGS, three capacitive touch screen technologies



[91]



---

[90]

https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Yoga_Gen_8/ThinkPad_X1_Yoga_Gen_8_Spec.pdf

[91] https://www.topwaydisplay.com/en/blog/LCD-capacitive-touch-screen-technologies

One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers. [92]

107.    The Lenovo ThinkPad X1 Yoga Gen 8 comprises a first electrode layer, disposed on a first side of the cover lens. For example, in an OGS display, the touch sensor circuit can be directly fabricated on the first side (e.g., the inner side) of the cover glass.

OGS/TOL Technology

OGS technology is to integrate the touch screen with the protective glass, coats the ITO conductive layer on the inner side of the protective glass, and directly performs coating and photolithography on the protective glass. Since a piece of glass and one-time bonding are saved, the touch screen can be made thinner and less expensive. However, OGS still faces the problems of strength and processing cost, and both require secondary strengthening to increase strength. [93]

[92] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html
[93] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/



One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers. [94]

108.    The Lenovo ThinkPad X1 Yoga Gen 8 an anti-reflective coating (i.e., anti-reflection layer) with the capacitive touchscreen. For example, in an OGS display, the touch screen integrates directly with the protective glass. The first ITO conductive layer is coated directly onto the first side of the cover glass.

### ThinkPad X1 Yoga Gen 8

| 14" | WUXGA (1920x1200) | Multi-touch | IPS[3] | 500nits | Anti-glare | 16:10 |
|-----|-------------------|-------------|--------|---------|-------------------------------|-------|
| 14" | WQUXGA (3840x2400) | Multi-touch | OLED | 500nits | Anti-reflection, anti-smudge | 16:10 |

**Touchscreen**

OGS (One Glass Solution) multi-touch, supports 10-point touch [95]

---

[94] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html

[95]

https://psref.lenovo.com/syspool/Sys/PDF/ThinkPad/ThinkPad_X1_Yoga_Gen_8/ThinkPad_X1_Yoga_Gen_8_Spec.pdf

**OGS/TOL Technology**

OGS technology is to integrate the touch screen with the protective glass, coats the ITO conductive layer on the inner side of the protective glass, and directly performs coating and photolithography on the protective glass. Since a piece of glass and one-time bonding are saved, the touch screen can be made thinner and less expensive. However, OGS still faces the problems of strength and processing cost, and both require secondary strengthening to increase strength.



96

| Display | 14" WQUXGA (3840x2400) OLED 500nits Anti-reflection / Anti-smudge, 100% DCI-P3, DisplayHDR™ 400, Dolby Vision®, Touch |
|---|---|
| Touchscreen | OGS, 10-point Multi-touch |

97

109.     The Lenovo ThinkPad X1 Yoga Gen 8 comprises a nongaseous insulating layer, disposed on a surface of the first electrode layer opposite the cover lens. For example, in the Lenovo ThinkPad X1 Yoga Gen 8's OGS display, the touch screen can integrate directly with the protective glass. The first ITO conductive layer can be coated directly onto the first side of the cover glass, by directly performing coating and photolithography processes on the same glass. A nongaseous insulating layer (e.g., a layer of insulation) is then disposed on a surface of the first electrode layer.

---

96 https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/
97 https://psref.lenovo.com/WDProduct/ThinkPad/ThinkPad_X1_Yoga_Gen_8?tab=spec

**OGS/TOL Technology**

OGS technology is to integrate the touch screen with the protective glass, coats the ITO conductive layer on the inner side of the protective glass, and directly performs coating and photolithography on the protective glass. Since a piece of glass and one-time bonding are saved, the touch screen can be made thinner and less expensive. However, OGS still faces the problems of strength and processing cost, and both require secondary strengthening to increase strength.



[98]



One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers. [99]

110.    The Lenovo ThinkPad X1 Yoga Gen 8 comprises a second electrode layer, disposed

---

[98] https://lcdfactories.com/introduction-of-in-cell-on-cell-ogs-tol-touch-technology/
[99] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html

on a surface of the nongaseous insulating layer opposite the first electrode layer. For example, in

the Lenovo ThinkPad X1 Yoga Gen 8's OGS display, a second electrode layer (e.g., another layer

of ITO conductive layer) is disposed on the nongaseous insulating layer (e.g., the insulation layer).



100



One approach to achieve OGS is "sensor on lens". In this case, ITO layer is deposited on the back of the cover glass and pattern it to create the electrodes. Thin layer of insulator added to the bottom of that and then second ITO layer is deposited on the back of that, patterning it to create electrodes running at right angles to the first layer. This module then laminated to standard LCD panel.

The touch technology deposited in the cover glass using the sensor on lens approach, results in a separate touch module that can be sold to the LCD display assemblers.

101

111.    On information and belief, Nippon Electric Glass Co., Ltd., a known supplier of

Lenovo display panels, cited to the '542 Patent Family in connection with its own PCT Application

WO2015056690A1, entitled "Touch Panel, and Display-Device-Fitted touch Panel," filed on

October 15, 2014.

112.    Defendants have and continue to indirectly infringe one or more claims of the '542

---

[100] https://www.topwaydisplay.com/en/blog/LCD-capacitive-touch-screen-technologies
[101] https://enginarators.blogspot.com/2016/01/one-glass-solution-to-touch-screen.html

Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as the Accused Products.

113.    Defendants, with knowledge that these products, or the use thereof, infringe the '542 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '542 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '542 least as early as the issuance of the '542 Patent.

114.    Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '542 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[102] For example, on Lenovo's website, user guides are provided, which instruct users to, among other things, operate Lenovo devices. For the Lenovo ThinkPad X1 Yoga Gen 8, the User Guide

---

[102]    *See, e.g.,* Lenovo ThinkPad X1 Yoga Gen 8 User Guide, available at: https://download.lenovo.com/pccbbs/mobiles_pdf/x1carbon_gen11_x1yoga_gen8_ug_en.pdf

instructs users on how to "Interact with your computer," which includes "Use the touch screen" at pages 19 through 21. At least the "Use the touch screen" section of the User Manual, instructs customers and end-users to use the Lenovo ThinkPad X1 Yoga Gen 8's display, which causes the customers and end-users to directly infringe the '542 Patent.



115.    On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, User Manuals for their specific products. On information and belief, Defendants' User Manuals and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. For example, the Motorola

---

[103] *See id.*

Moto G Power was designed and manufactured by Defendants, and, therefore, Defendants are most familiar with its operations.

116.     Because of Defendants' inducement, Defendants' customers and end-users use Accused Products in a way Defendants intend and directly infringe the '542 Patent. Defendants perform these affirmative acts with knowledge of the '542 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '542 Patent.

117.     Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '542 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '542 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '542 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '542 Patent. The Accused Components include, but are not limited to, Defendants' display screens in the Accused Products, and the components thereof. Defendants perform these affirmative acts with knowledge of the '542 Patent and with intent, or willful blindness, that they cause the direct infringement of the '542 Patent.

118.     Alpha Touch has suffered damages as a result of Defendants' direct and indirect infringement of the '542 Patent in an amount to be proven at trial.

119.     Alpha Touch has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '542 Patent, for which there is no adequate remedy at law,

unless Defendants' infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Touch prays for relief against Defendants as follows:

a.      Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.      An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.      An order awarding damages sufficient to compensate Alpha Touch for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.      Entry of judgment declaring that this case is exceptional and awarding Alpha Touch its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.      Such other and further relief as the Court deems just and proper.

Dated: October 28, 2025                    Respectfully submitted,

                                           _/s/ Vincent J. Rubino, III_____
                                           Alfred R. Fabricant
                                           NY Bar No. 2219392
                                           Email: ffabricant@fabricantllp.com
                                           Peter Lambrianakos
                                           NY Bar No. 2894392
                                           Email: plambrianakos@fabricantllp.com
                                           Vincent J. Rubino, III
                                           NY Bar No. 4557435
                                           Email: vrubino@fabricantllp.com
                                           **FABRICANT LLP**
                                           411 Theodore Fremd Avenue

Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
51 J.F.K. Parkway
Short Hills, NJ 07078
Telephone: (973) 535-0920
Facsimile: (973) 535-0921

***ATTORNEYS FOR PLAINTIFF,
ALPHA TOUCH GROUP LLC***